UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| ADESA, INC., § | | CLERKS OFFICE U.S. DIST. COURT |
| 11299 N. Illinois Street § | | AT ABINGDON, VA |
| Carmel, IN 46032 § | | FILED |
| § | | 9/3/20 |
| Plaintiff, § | | JULIA C. DUDLEY, CLERK |
| § | | BY: s/ ELLA SURBER |
| v. § | Case No. 1:20CV44 | DEPUTY CLERK |
| § | | |
| GREG LEWIS § | | |
| 20216 Auction Drive § | | |
| Bristol, VA 24202 § | | |
| § | | |
| and § | | |
| § | | |
| ABINGDON AUTO AUCTION, INC., § | | |
| 20216 Auction Drive § | | |
| Bristol, VA 24202 § | | |
| § | | |
| Defendants. § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DAMAGES**

Plaintiff ADESA, INC. ("ADESA"), by counsel, hereby submits this Original Complaint for a Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Damages against Defendants Greg Lewis and Abingdon Auto Auction, Inc., and states:

**NATURE OF THE ACTION**

1.      This action is brought by ADESA to prevent its former employee, Greg Lewis, from violating his contractual obligations. Lewis has breached and is continuing to breach the non-competition provision in his Confidentiality, Non-Solicit, Non-Compete, and IP Assignment

Agreement (the "Agreement")(Exhibit 1) by competing directly with ADESA after he recently joined ADESA's competitor, Defendant Abingdon Auto Auction, Inc. ("AAA"), working in the same market, in the same business, and having some of the same responsibilities as he had with ADESA. Since joining AAA, Lewis is now able to improperly solicit ADESA's employees, business relationships, and customers and to disclose and utilize ADESA's confidential and proprietary information.

2. On or about January 17, 2020, Lewis executed the Agreement.

3. On May 1, 2020, Lewis resigned his employment ADESA. At that time, Lewis was employed as a Dealer Sales Executive in ADESA's 13.2 market, covering East Tennessee and Virginia.

4. Lewis is currently working as a General Manager for AAA in Virginia, overseeing sales, and, upon information and belief, is dealing with some of the same customers and suppliers (dealerships) with whom he did business on behalf of ADESA. Lewis's actions are in disregard of his contractual obligations.

5. AAA has been put on notice of the Agreement and continues to employ Lewis, thereby evidencing an intent to tortiously interfere with the contract between ADESA and Lewis.

6. For these reasons, ADESA seeks the relief described herein to prevent Defendants from causing further harm to ADESA's business and operations in the Abingdon Division of the Eastern District of Virginia.

**PARTIES**

7. ADESA, Inc., is a Delaware corporation with a principal place of business in Carmel, Indiana.

**PLAINTIFF'S ORIGINAL COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUCTION, AD DAMAGES-Page 2**

8. Lewis purports to be a resident of Virginia, who may be served at his business address, 20216 Auction Drive, Bristol, VA 24202.

9. AAA is Lewis's new employer and is Virginia corporation with a principal place of business located at 20216 Auction Drive, Bristol, VA 24202. AAA may be served by its registered agent, Michael E. Anderson, at that address.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

11. This Court has authority to exercise personal jurisdiction over Defendants because Defendants have transacted business in the Western District of Virginia, Abingdon Division, and Defendant AAA has a principal place of business located in the Western District of Virginia, Abingdon Division.

12. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in the Western District of Virginia, Abingdon Division.

**FACTUAL BACKGROUND**

13. ADESA is engaged in the business of whole vehicle auction solutions to professional car buyers and sellers. It has been in this business for over 30 years and employs more than 11,000 people at more than 75 auction sites and corporate locations throughout North America.

14. ADESA has invested and continues to invest significant resources to develop highly confidential, non-public information, methods and techniques (and databases to store such information) to: (a) identify contacts with vehicle suppliers to obtain an inventory of marketable

automobiles for auction; (b) identify entities in the market for purchasing automobiles at whole auto auction; (c) maintain, develop and nurture business relationships (and associated goodwill) with these suppliers and purchasing entities; (d) market itself as a leading source of quality value automobiles for buyers at auction; and (e) advise regarding appropriate price range to attract and maintain both the suppliers of inventory and the purchasers at auction.

15. ADESA has invested considerable time, expense, and resource in its Dealer Sales Executives, including Lewis, to train them and permit them to perform their sales and other duties for ADESA efficiently, successfully, and profitably.

16. Dealer Sales Executives, including Lewis, are provided extensive training in several forms including training through KAR Learning Connection on such topics as Finding Inventory, Dealer Block, LiveBlock, and Run Lists.  Dealer Sales Executives, such as Lewis, become inexorably and intimately knowledgeable regarding ADESA's automobile sources and suppliers, customers, financial analysis and formulas for setting prices and conducting business at a profit, quality control measures and means of maintaining customer satisfaction, and other items of confidential business information that give ADESA a competitive advantage in the whole auto auction industry.

17. The information, training, databases, and methodologies developed by ADESA described above are valuable, confidential, and proprietary to ADESA and are not readily available in the public domain. The aforementioned information and goodwill developed have significant economic value to ADESA and would be of significant economic value to competitors.

18. To protect its business goodwill and client relationships, confidential information and trade secrets, ADESA requires its Dealer Sales Executives to sign written agreements that, inter

alia, contain certain limited restrictions on their business and employment activities after the end of their employment relationship with ADESA.  Lewis's Agreement is attached as Exhibit 1.

19.     In addition, the Kar Auction Services' Code of Business Conduct and Ethics makes clear that confidential information must be protected from disclosure and treated as a Company asset.

20.     Lewis started his employment with ADESA on May 1, 2013, as an Outside Sales Representative.

21.     Upon commencing his employment with ADESA, Lewis received training regarding ADESA's business methods, processes, and techniques.  Lewis was also given access to ADESA's supplier and customer network and the ability to develop goodwill with them on ADESA's behalf.

22.     On December 17, 2019, Lewis was offered the position of Dealer Solutions Executive with the Kar Global Solutions organization, effective January 20, 2020.  The offer letter for the Dealer Solutions Executive position made clear that the execution of the Agreement was a condition of the position.  See Exhibit 2.

23.     On January 17, 2020, Lewis signed the Agreement. *See* Ex. 1.  The Agreement is between Lewis and ADESA, Inc. (the KAR entity which employed Lewis and to which Lewis provides services) (defined as "Company" under the Agreement).  A list of KAR entities is attached to the Agreement as Appendix B.  ADESA, Inc. employed Lewis and is identified on Appendix B to the Agreement.

24.     At the time of signing the Agreement (until the time of his resignation), Lewis's territory of responsibilities with ADESA was Virginia and East Tennessee.

25.     The Agreement contains, among other things the following restrictions:

Case 1:20-cv-00044-JPJ-PMS   Document 1   Filed 09/03/20   Page 6 of 15
Pageid#: 6

a. Paragraph 2 contains a restriction on the use or disclosure of ADESA's Confidential Information. Confidential Information is defined as "an item of information or compilation of information in any form (tangible or intangible) related to the Company's Business" that Lewis acquired or gained access to during his employment that ADESA has not authorized public disclosure of, and that is not readily available to the public or persons outside ADESA. The Agreement provides examples of Confidential Information to include "fees, costs and pricing structures; distribution and sales methods and systems; sales and profit figures; marketing information; advertising and pricing strategies; analyses; …databases; accounting and business methods; business plans;…trade secrets;…and information concerning existing and prospective clients, distributors, agents, suppliers and customers and other information related thereto."

b. Paragraph 3 contains Protective Covenants, including:

   i. An in-term (while employed) and twelve (12) month post-employment (the "**Restricted Period**") restriction on soliciting any employee that Lewis gained knowledge of through his employment with ADESA (a "**Covered Employee**") to leave the employment of the Company (Paragraph 3(a));

   ii. A restriction during the Restricted Period on hiring, attempting to hire, or assisting in hiring any Covered Employee on behalf of a Competing Business (Paragraph 3(b));

**PLAINTIFF'S ORIGINAL COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUCTION, AD DAMAGES-Page 6**

  iii. A restriction during the Restricted Period on soliciting Covered Customers or Key Relationships for the purpose of doing any business that would compete with the Company's Business (Paragraph 3(c));

  iv. A restriction during the Restricted Period on knowingly engaging in conduct that is intended to cause, or could reasonably be expected to cause the Covered Customer of Key Relationship to stop or reduce doing business with ADESA, or that would involve diverting business opportunities away from ADESA (Paragraph 3(d));

  v. A restriction during the Restricted Period on providing services for the benefit of a Competing Business within the Territory that are the same or similar in function or purpose to those Lewis provided to ADESA during the Look Back Period (Paragraph 3(e));

  vi. A restriction during the Restricted Period on taking on any other responsibilities for a Competing Business that would involve the probable use or disclose of Confidential Information or the conversion of Covered Customers or Key Relationships to the benefit of a Competing Business or detriment of the Company (Paragraph 3(f)).

 c. The Agreement defines "**Business**" as engaging in "remarketing solutions for the automotive wholesale used vehicle industry." "**Competing Business**" is defined as "any person or entity that engages in (or is planning to engage in) a business that competes with a portion of the Company's Business that [the employee] had involvement with or access to Confidential Information about during the last two

**PLAINTIFF'S ORIGINAL COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUCTION, AD DAMAGES-Page 7**

years of [the employee's] employment (or such shorter period of time as [the employee] is employed (the "**Look Back Period**")." "**Covered Customer**" is defined as "a customer or potential customer that [the employee] had material business-related contact or dealings with or access to Confidential Information about during the Look Back Period." "'**Key Relationships**'" refers to a person or entity with an ongoing business relationship with the Company (including vendors and distributors) that [the employee] had material business-related contact or dealings with during the Look Back Period. And, for individuals such as Lewis who were assigned territories of responsibility, "**Territory**" is defined as "the geographic territory(ies) assigned to [the employee] by Company during the Look Back Period (by state, county, or other recognized geographic boundary used in the Company's business)".

26. The Agreement contains a mechanism for employees who believe that they are unable to find employment because of the restrictions in Paragraphs 3(e) and (f). Specifically, Paragraph 3 provides that if three months have passed since the employee ceased working for the Company and the employee believes that he or she has been unable to find subsequent employment because of the restrictions contained in Paragraphs 3(e) and (f), the employee may apply to the Company for a waiver of the restrictions in Paragraphs 3(e) and (f) or for compensation for the remaining period of time the Company determines Paragraph 3(e) or (f) should remain in effect. Decisions on whether to grant a waiver or compensation are within the Company's discretion. Paragraph 3 encourages employees who apply for a waiver or compensation under the paragraph

to supply the Company with information about their efforts to obtain non-competitive employment.

27. In January 2020, ADESA conducted a meeting of its national sales organization. This meeting took place in Indianapolis, Indiana. Prior execution of ADESA's confidentiality, Non-Solicit, Non-Compete, and IP Assignment Agreement was a condition of both continued employment and attendance at that meeting.

28. The January 2020 meeting includes sessions on the following topics: KAR Global's "Go to Market Strategy," market conditions, region/market planning and strategies, dealer onboarding, auction product training, among many others.

29. On May 1, 2020, Lewis resigned his employment with ADESA. At the time of his resignation, Lewis was on furlough due to Covid19, concerns over the wellbeing of ADESA's employees, customers, and suppliers, and the need to comply with applicable state and local safety mandates (and OSHA). Lewis was still receiving benefits, including ADESA paying the employee's premium, despite being on furlough and the anticipation was that Lewis would be resuming work once conditions improved.

30. On May 1, 2020, Lewis informed ADESA that he might be going to work for a competitor, but he did not elaborate.

31. On or about May 5, 2020, ADESA learned that Lewis had gone to work for AAA.

32. AAA is engaged in the whole used auto auction industry and is a direct competitor to ADESA in Virginia.

33. Upon information and belief, AAA has not suspended in-person auctions – calling into question AAA's compliance with state and local orders – in particular, the Commonwealth of

**PLAINTIFF'S ORIGINAL COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUCTION, AD DAMAGES-Page 9**

Virginia's Emergency Temporary Standard for Infection Disease Prevention: SARS-Co-V-2 Virus that Causes Covid-19.

34. On May 15, 2020, ADESA, through its corporate counsel, wrote to Lewis and AAA regarding concerns that Lewis was violating the Agreement by his employment within the Territory by a Competing Business (AAA). *See* Exhibits 3 & 4 hereto. ADESA's counsel included a copy of the Agreement with her letters to Lewis and AAA. Therefore, AAA has been on notice of the Agreement for almost three months.

35. ADESA received no response to its correspondence from Lewis or AAA.

36. In late June 2020, ADESA received information that Lewis was still working for AAA.

37. On July 9, 2020, the undersigned counsel wrote to Lewis again asking him to cease and desist from any further violation of the Agreement. *See* Exhibit 5 hereto.

38. On July 13, 2020, the undersigned counsel spoke with Lewis who admitted to working for AAA in Virginia as a General Manager. Lewis indicated that he would get back to the undersigned counsel about his intentions, but Lewis did not do so.

39. Three months have passed since Lewis's resignation. Lewis has, therefore, become eligible to request a waiver or compensation under Paragraph 3 of the Agreement. However, Lewis has never made an application for a waiver or compensation under Paragraph 3. To the contrary, despite receiving cease and desist letters from ADESA and the undersigned counsel, Lewis has continued in the employ of AAA in violation of the Agreement. Indeed, given the fact that Lewis almost immediately became employed by a competitor to ADESA, it appears that Lewis did not endeavor to seek non-competitive employment.

40.   Despite Lewis's lack of compliance with Paragraph 3, ADESA has made good faith attempts to resolve this matter without the Court's involvement, including potentially returning Lewis to work if he would come back.  Despite ADESA's diligent efforts in this regard, no resolution could be reached.

41.   As a direct and proximate result of Defendants' actions, including, but not limited to Lewis's breach of the Agreement, and AAA's wrongful interference, ADESA has been, and continues to be, irreparably damaged in an amount that is difficult, if not impossible, to determine unless Defendants are enjoined from the aforementioned conduct.  ADESA is being a responsible business and has suspended in-person auctions.  Lewis and AAA are taking advantage of ADESA's compliance with the law and best practices, disregarding Lewis's Agreement in the process, and bankrolling on the pandemic to usurp ADESA's business.

42.   For these reasons, ADESA is filing this Complaint and is seeking a temporary restraining order, preliminary injunction, and permanent injunction, as well as damages.

## COUNT I
## BREACH OF CONTRACT
### (Defendant Lewis)

43.   ADESA incorporates herein by reference the allegations of the preceding paragraphs.

44.   The Agreement is a valid and enforceable contract between Lewis and ADESA, and ADESA has performed all necessary conditions precedent to its enforcement.

45.   By accepting employment with AAA, a direct competitor of ADESA, within Virginia and engaging in an aspect of ADESA's business for which he performed services within the last two

years of his employment (used whole automobile auction), Lewis has breached, and continues to breach, the Agreement.

46. By such action, Lewis has caused and continues to cause ADESA immediate and irreparable harm for which ADESA has no adequate remedy at law.

47. Lewis will continue such wrongful conduct unless enjoined.

48. Therefore, ADESA is entitled to a temporary restraining order and preliminary and permanent injunctive relief.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Defendant AAA)

49. ADESA incorporates herein by reference the allegations of the preceding paragraphs.

50. The Agreement is a valid enforceable contract between Lewis and ADESA.

51. At all times relevant to this action, AAA is and was aware that Lewis was previously employed by ADESA and that his post-employment activities are governed by the Agreement which contained restrictive covenants, including a non-compete covenant.

52. AAA intentionally and without justification solicited and hired Lewis to compete directly with ADESA in a position with AAA that violated and continues to violate the noncompete restrictions of the Agreement.

53. As a result of AAA's intentional acts, AAA caused Lewis to breach the Agreement and interfered with ADESA's contractual rights.

54. By such action, AAA caused and continues to cause ADESA immediate and irreparable harm for which it has no adequate remedy at law.

55. AAA will continue such wrongful conduct unless enjoined.

56. As a result of AAA tortious interference, ADESA is entitled to a temporary restraining order and preliminary and permanent injunction.

WHEREFORE, ADESA respectfully requests this Court enter a temporary restraining order and subsequent additional injunction orders as follows:

A. Preliminarily and permanently enjoining Lewis, for one (1) year from competing with ADESA, as described in the Agreement within East Tennessee and Virginia;

B. Preliminarily and permanently enjoining Lewis, for one (1) year from soliciting or attempting to solicit Covered Employees, Covered Customers and Key Relationships and from interfering with ADESA's relationships with its Covered Employees, Covered Customers and Key Relationships;

C. Preliminarily and permanently enjoining AAA, for one (1) year, from continuing employment of Lewis with AAA in a position that allows him to compete directly with ADESA and otherwise violating the Agreement;

D. Preliminarily and permanently enjoining AAA from interfering with the other contractual rights of ADESA as to its Covered Employees, Covered Customers and Key Relationships;

E. Awarding ADESA its attorneys' fees, costs, and expenses, as well as pre- and post-judgment interest; and

F. Granting such other and further relief as the Court may deem just, equitable and proper.

Dated: September 3, 2020									Respectfully submitted

 /s/ Paul J. Kennedy
Paul J. Kennedy (VA Bar No. 29802)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., NW, Suite 400
Washington, D.C. 20006-4046
202.842.3400 Telephone
202.842.0011 Facsimile
PKennedy@littler.com

Jacqueline C. Johnson *(pro hac vice forthcoming)*
JACKIE JOHNSON, P.C.
4540 Westway
Dallas, TX  75205
214.497.7242 Telephone
jackie@jackiejohnsonlaw.com

*Counsel for Plaintiff ADESA, Inc.*

VERIFICATION

On this day personally appeared Marty Nowlin, Senior Vice President of Human Resources, for ADESA Inc. and upon his oath stated the contents of Plaintiff's Original Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Damages, are true and correct based on his personal knowledge as an authorized corporate representative of ADESA, Inc.

Signed and sworn this 1st day of September, 2020.

_____
Marty Nowlin

State of INDIANA

County of HAMILTON

This Verification was acknowledged before me on 9/1/2020 (date)

by Marty Nowlin.

Signature of notarial officer: _____

Stamp:

KATHLEEN E BRAMEL
Notary Public - Seal
Marion County - State of Indiana
Commission Number 666257
My Commission Expires Apr 5, 2023

PLAINTIFF'S ORIGINAL COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY
INJUNCTION, PERMANENT INJUCTION, AD DAMAGES-Page 15