IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **ADESA, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20CV00044 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **GREG LEWIS, ET AL.,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Jacqueline C. Johnson, Jackie Johnson, P.C., Dallas, Texas, and Paul J. Kennedy, Littler Mendelson, P.C., Washington, D.C., for Plaintiff; Dennis E. Jones, Dennis E. Jones, PLC, Abingdon, Virginia, for Defendants.*

In this diversity action under Tennessee law seeking to enforce a non-compete agreement against a former employee and his new employer, the plaintiff requests a preliminary injunction. Following an evidentiary hearing, I find that the request must be denied.

### I.

To obtain a preliminary injunction from a federal court, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each factor must be satisfied. *The Real Truth*

*About Obama, Inc. v. FEC,* 575 F.3d 342, 347 (4th Cir. 2009), *vacated and remanded on other grounds*, 559 U.S. 1089 (2010), *aff'd,* 607 F.3d 355 (4th Cir. 2010) (per curiam).  While a movant need not show certainty of success, it must make a "clear showing" that it is likely to succeed on the merits as a prerequisite to a preliminary injunction.  *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013).

## II.

The plaintiff, ADESA, Inc. ("ADESA"), filed this action against Greg Lewis, a former employee, and Abingdon Auto Auction, Inc. ("AAA"), his current employer, seeking injunctive relief and compensatory damages based on the alleged breach of a certain Confidentiality, Non-Solicit, Non-Compete, and IP Assignment Agreement (the "Non-Compete Agreement") by Lewis and tortious interference with contract by AAA.[1]  Suit was filed on September 3, 2020, and ADESA sought a preliminary injunction.  The parties agreed to expedited discovery prior to an evidentiary hearing on the preliminary injunction, which hearing was held on December 14, 2020.

Based on the record before me, I make the following findings of fact.

1.     ADESA, headquartered in Indiana, is a subsidiary of KAR Auction Services, Inc., and one of the many affiliated entities of KAR Global, a large

---

[1]   I find that the court has subject-matter jurisdiction based upon diversity of citizenship and amount in controversy.  28 U.S.C. § 1332(a).

nationwide company.  ADESA is engaged in the business of conducting wholesale automobile auctions, by which their customers, usually automobile dealers, sell used vehicles by consignment.  It has been in this business for over 30 years and employs more than 11,000 persons at more than 75 auction sites and other locations in North America.  At least in the recent past, the sales have been in person at ADESA's auction sites, where competing buyers bid in person on the vehicles.  This case involves ADESA's Kingsport, Tennessee, site.   There are three competing automobile auction businesses in the same market area — ADESA, Dealers Auto Auction, and defendant Abingdon Auto Auction, Inc. ("AAA"), which is located in Abingdon, Virginia.

2.  The defendant Greg Lewis, who has resided in Tennessee during all of the events in this case, was employed by ADESA beginning on May 1, 2013, until he resigned and accepted a job offer from AAA on May 4, 2020.  At that time he had been on furlough from ADESA since March of 2020, along with other ADESA employees, because of the Covid-19 pandemic.[2]  His job at ADESA was to maintain

---

[2] Jessica Bailey Mauro, vice president of dealer sales for KAR Global, testified that it was the "intention" of the company to bring back each furloughed employee in June or July and each employee was so told, including Lewis. Tr. 83–84, ECF No. 27.  Lewis testified that he did not consider that a guarantee and accordingly he accepted the job with AAA in May.  *Id.* at 136.  He also claimed that there were "a lot of sales reps that did not get their job back."  *Id.*  I find that Lewis may have been returned from furlough in June or July had he not taken another job, but he was not assured of that and there is no evidence at this point that he would have been rehired.  In light of the uncertainty of the course of the coronavirus pandemic, no responsible company could guarantee employees at any point from March 2020 on what its future employment decisions might be.

existing business and obtain new business for the Kingsport ADESA site from consignors among the various automobile dealers in his sales territory, which consisted of East Tennessee and Western North Carolina.  Lewis would inquire of prospective customers the amount they were receiving from ADESA's competitors in an effort to undercut them, but the ultimate decision on pricing was up to Lewis' superior.

3.      There had been a restructuring in the KAR organization after it acquired a company called TradeRev that combined that new company's sales team with that of ADESA's into the KAR Global sales team.  Lewis obtained a new title and a new supervisor.  In addition, Lewis, along with many other employees, was required as a condition of continued employment to sign a company-prepared form Non-Compete Agreement.  Lewis digitally signed the form on January 17, 2020.  The Non-Compete Agreement provides in pertinent part that for a period of 12 months after Lewis' employment ended, irrespective of which party ended the relationship or why it ended,  Lewis must not "provide services for the benefit of a Competing Business within the Territory . . . that are the same or similar in function or purpose to those [he] provided to [ADESA] during [the last two years of his employment]." Pl.'s Ex. 2 ¶ 3(e), ECF No. 23-2.  In addition, Lewis agreed during the 12-month period not to "solicit or attempt to solicit a Covered Customer or Key Relationship . . . for the purpose of doing any business that would compete with [ADESA's]

Business, or . . . knowingly engage in any conduct that is intended to cause, or could reasonably be expected to cause the Covered Customer or Key Relationship to stop or reduce doing business with [ADESA], or that would involve diverting business opportunities away from [ADESA]. *Id.* at ¶ 3(c), (d). The agreement provides that if an employee fails to comply with a timed restriction, the time period "will be extended by one day for each day Employee is found to have violated the restriction, up to a maximum of eighteen (18) months." *Id.* at ¶ 9. After the restructuring, Lewis attended a kickoff sales meeting in Indianapolis on January 27–29, 2020, with approximately 500 other KAR Global salespersons at which sales techniques and company strategy were discussed. Pl.'s Ex. 4, ECF No. 23-4.

3.   Michael Eugene Anderson is the owner of AAA and hired Lewis on May 4, 2020, with the title of General Manager. He did not know Lewis but learned that he had been furloughed and offered him the job. He hired him and paid him a large salary because of Lewis' good connections with dealers in Tennessee and western North Carolina that could grow AAA's business. Tr. 95, ECF No. 27. Part of Lewis' responsibilities as General Manager of AAA is to interact with consigning dealerships, both in person and over the telephone, including those dealerships that he had dealt with during his employment with ADESA, in order to maintain those relationships. *Id.* at 111, 112. It is likely that ADESA lost business because of Lewis' employment by AAA. *Id.* at 159–60.

III.

In a diversity case, I must apply the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Non-Compete Agreement states that "[t]he laws of the state in which the Employee last regularly resided and worked shall apply to the interpretation of and disputes arising out of this Agreement."  Pl.'s Ex. 2 ¶ 6, ECF No. 23-2. Virginia generally honors contractual choice of law provisions. *Thornhill v. Donnkenny, Inc.*, 823 F.2d 782, 786 (4th Cir. 1987).  The evidence shows that Lewis last regularly worked and resided in Tennessee.  Moreover, the parties agree that Tennessee substantive law must be applied.

"Covenants not to compete, because they are in restraint of trade, are disfavored in Tennessee." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999).  Nevertheless, they are enforceable if they are reasonable under the circumstances.  *Id.*  To be enforceable, a covenant not to compete must be supported by adequate consideration, and it must protect a legitimate business interest of the employer.  *Hinson v. O'Rourke*, No. M2014-00361-COA-R3-CV, 2015 WL 5033908, at *2 (Tenn. Ct. App. Aug. 25, 2015) (unpublished) (citing *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 363 (Tenn. 1966)).  A non-compete agreement must also be reasonable as to duration and geographic scope.  *Cent. Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 33 (Tenn. 1984).

"Whether there is adequate consideration to support a non-competition covenant signed during an on-going employment relationship depends upon the facts of each case." *Id.* at 33. The Supreme Court of Tennessee has held that while a promise of continued employment alone is insufficient, actual performance of continued employment may constitute adequate consideration. *Id.* at 34. "Whether performance is sufficient to support a covenant not to compete depends upon the facts and circumstances of each case." *Id.* at 35. Relevant factors include the length of time the employment continues after execution of the covenant and the circumstances under which the employment ends. *Id.* "It is possible, for instance, that employment for only a short period of time would be insufficient consideration under the circumstances." *Id.* (finding adequate performance where employment continued for seven years following execution of covenant not to compete and employees resigned voluntarily).

In addition to adequate consideration, Tennessee courts consider several factors in deciding whether a non-compete agreement is reasonable. A court must weigh "the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest." *Hasty v. Rent-a-Driver, Inc.*, 671 S.W.2d 471, 472-73 (Tenn. 1984) (internal quotation marks and citation omitted). In assessing the threatened danger to the employer, the court determines

"whether the employer has a legitimate business interest for the protection of which a restrictive covenant is reasonable." *Id.* at 473. This is considered to be "a threshold question." *Vantage Tech.*, 17 S.W.3d at 644. For a covenant to be enforceable, "there must be special facts present over and above ordinary competition . . . such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer." *Hasty*, 671 S.W.2d at 473.

> Considerations in determining whether an employee would have such an unfair advantage include (1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employer's customers tend to associate the employer's business with the employee due to the employee's repeated contacts with the customers on behalf of the employer.

*Vantage Tech.*, 17 S.W.3d at 644. "[G]eneral knowledge and skill appertain exclusively to the employee, even if acquired with expensive training, and thus do[ ] not constitute a protectible interest of the employer." *Hasty*, 671 S.W.2d at 473. Customer lists and pricing information do not constitute confidential business information. *Vantage Tech.*, 17 S.W.3d at 645.

The Supreme Court of Tennessee has approvingly cited the Restatement (Second) of Contracts § 188 and held a covenant invalid where "(1) the restraint imposed is greater than is needed to protect the employer's legitimate interest and (2) the employer's need is outweighed by the hardship to the employee and the likely

injury to the public." *Selox, Inc. v. Ford*, 675 S.W.2d 474, 475 (Tenn. 1984).  The

court agreed with the Restatement's comment:

> Post-employment restraints are scrutinized with particular care because
> they are often the product of unequal bargaining power and because the
> employee is likely to give scant attention to the hardship he may later
> suffer through the loss of his livelihood.  This is especially so where the
> restraint is imposed by the employer's standardized printed form.  Cf.
> § 208.  A line must be drawn between the general skills and knowledge
> of the trade and information that is peculiar to the employer's business.

*Id.* at 476 (quoting Restatement (Second) of Contract § 188, cmt. g).

## IV.

Based on the record before me, I find that the plaintiff has not made a clear

showing that it is likely to succeed on the merits in this case, and thus I will deny the

request for a preliminary injunction.  There is serious question under Tennessee law

as to the enforceability in this case of the Non-Compete Agreement, regardless of

the evidence that Lewis' employment with AAA was in violation of the restrictions

of the agreement.  The form Non-Compete Agreement was imposed on Lewis after

over six years of employment, leaving him only a few months of remaining full

employment because of the unexpected pandemic.  The financial uncertainty

imposed on Lewis by this timing likely outweighs the plaintiff's need for

competitive protection.  Moreover, I do not find from the evidence presented that

Lewis received extensive or specialized training sufficient to justify the restrictions.

His value was his knowledge of and prior contact with the dealer customers, and

there is at least a question as to whether that value constitutes a legitimate basis for the restrictions under Tennessee law.  *See Vantage Tech.*, 17 S.W.3d at 645.  There do not appear to be any "special facts" in this case that would justify their enforcement.  *Hasty*, 671 S.W.2d at 473.

A separate order will be entered denying the Application for Preliminary Injunction.

DATED:   January 20, 2021

/s/  JAMES P. JONES
United States District Judge